**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PHILLIP S. ATSAS, | ) CASE NO. 4:21-cv-00366 |
| | ) |
| Plaintiff, | ) JUDGE DAVID A. RUIZ |
| | ) |
| v. | ) |
| | ) |
| MATTHEW L. BOWEN, *et al.*, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |
| | ) |
| | ) |

This matter is before the Court upon two separate Motions for Summary Judgment. The first Motion was filed by Defendants City of Campbell (Campbell), Lt. Kevin Sferra (Sferra), and Officer Ryan Young (Young) (collectively, the "Campbell Defendants"). (R. 32). The second Motion was filed by Defendants Superintendent Matthew L. Bowen (Bowen), in both his official and individual capacities, and the Campbell City School District Board of Education (the Board) (collectively, the "School District Defendants"). (R. 33).[1] For the following reasons, both motions are GRANTED.

## I. Procedural Background

Plaintiff Philip S. Atsas (Plaintiff or Atsas) has filed a civil complaint alleging multiple claims against Campbell, Young, Sferra, Bowen, and the Board, regarding an allegedly unlawful criminal proceeding that had been previously brought against Atsas in 2019 and 2020. (*See generally* R. 1). Specifically, Atsas alleges against some or all Defendants federal and state law

---

[1] The Campbell Defendants and School District Defendants are collectively referred to as Defendants.

claims of false arrest, illegal search and seizure, false imprisonment, malicious prosecution, abuse of process, defamation, and municipal liability for inadequate training and supervision of Campbell's police officers. (R. 1, PageID# 14–20).

Following completion of discovery, both the Campbell Defendants and School District Defendants filed their respective Motions for Summary Judgment, requesting judgment as a matter of law on all Atsas's claims. (R. 32, PageID# 769; R. 33, PageID# 803). Atsas filed two Opposition briefs (R. 38; R. 39) and Defendants filed further Reply briefs (R. 41; R. 43).

## II. Factual Background[2]

### A. <u>Phil Atsas</u>

Relevant to the pending claims, Mr. Atsas was employed as a physical education teacher by the Campbell City School District (the "School District") for approximately twenty years. (R. 1, PageID# 2 ¶ 1; R. 32, PageID# 752). For many of those years, Atsas also served as a coach for the Campbell Memorial High School soccer team, as well as for the School District's intramural soccer team. (R. 29, PageID# 507, 512). Throughout Atsas's tenure as a coach, there was no fee for high school students to play on the school team, and by 2017, there were no longer fees required to play on the School District's intramural sports teams. (R. 29, PageID# 526, 536).

In 2014, Bowen reprimanded and suspended Atsas for ten days without pay for Atsas's involvement in unauthorized fundraising activities. (R. 30, PageID# 637). As a result of this disciplinary action, Atsas was suspended from coaching for two or three years, and the School District instructed Atsas that he could no longer handle any money. (R. 29, PageID# 534, 536; R. 30, PageID# 533). In 2015, the School District separately reprimanded Atsas for "failing to

---

[2] The following recitation of facts is undisputed unless otherwise indicated.

conduct [himself] in a professional manner and insubordination." (R. 29, PageID# 534; R. 30, PageID# 639).

Going into the 2017 soccer season, Bowen reminded Atsas that Atsas was not supposed to handle any money. (R. 29, PageID# 536). Despite this background and reminder, and without seeking approval from the School District, Atsas arranged for the high school soccer players to participate in a two-week preseason soccer program at the Tri-County Sports Complex ("TCSC"), a private indoor facility in Liberty, Ohio. (R. 1, PageID# 8 ¶ 28; R. 29, PageID# 537). In August 2017, the TCSC sent a $4,000 invoice to the Campbell high school to collect payment for that preseason summer camp. (R. 28, PageID# 367; R. 29, PageID# 542; R. 30, PageID# 674). Despite its surprise at receiving the invoice, the School District paid the full amount to the TCSC. (R. 28, PageID# 367–368; R. 29, PageID# 542; R. 30, PageID# 675–677, 683–686; R. 33-1, PageID# 807 ¶ 4). Ultimately, Atsas and his assistant coaches collected donations to cover $3,700 of the total cost of the preseason program and turned those funds over to the School District. (R. 28, PageID# 367–368; R. 29, PageID# 542; R. 30, PageID# 664–673, 678). In December 2017, Bowen held another meeting with Atsas about the School District's requisition and purchase order process. (R. 29, PageID# 542–543; R. 30, PageID# 687). At that meeting, Atsas was once again reminded that he was not allowed to handle money. (R. 29, PageID# 542–543).

### B. Instant Incident

#### 1. *TCSC Teams*

In the winters of 2017–2018 and 2018–2019, Atsas organized private recreational youth teams—for children between the ages of seven and nine—to play at the TCSC. (R. 1, PageID# 8 ¶ 29). Because these teams and the program were privately run, they were unaffiliated with the

School District. (*Id.*).

To play at the TCSC these winter months, each participating team had to pay an entry fee to the TCSC. (*Id.*, PageID# 6 ¶ 20). Atsas collected payments from participating children's parents to cover his teams' TCSC entry fee. (*Id.*, PageID# 8 ¶ 30). Such payments to Atsas were required for children to play soccer at the TCSC on Atsas's teams. (*Id.*) After collecting the payments from the parents, Atsas wrote a check to the TCSC in the full amount of the entry fee to field his teams. (*Id.* ¶ 31).

### 2. *Bowen's Investigation*

At a School District board meeting in the fall of 2019, the Board discussed Atsas's prior disciplinary history related to fundraising. (R. 33-1, PageID# 807 ¶ 5). During this discussion, a Board member mentioned to Bowen that his daughter paid Atsas for her children to participate in a soccer program. (*Id.*). In November 2019, Bowen investigated this matter further and met with four individuals who had paid Atsas for their children to participate in a soccer program. (*Id.*, PageID# 807 ¶ 6). These parents told Bowen that for their children to participate in the TCSC soccer program, they paid Atsas varying amounts between $25 and $70 per child. (R. 28, PageID# 370–372, 465–470; R. 33-1, PageID# 807 ¶ 7).

Around this same time, Bowen decided to speak with the police about Atsas's conduct, apparently concerned that Atsas was convincing parents to pay him money for their children to play in a free school soccer program and without depositing such payments with the School District. (R. 28, PageID# 404; R. 33-1, PageID# 807 ¶ 8). Before meeting with the police, Bowen wrote a note that said, "Now, upon recent discoveries and early investigation, review of records, and statements [sic] have determined fraud has been committed, theft and potential criminal acts." (R. 33-1, PageID# 807–808 ¶ 9).

4

### 3. *Young's Investigation*

On November 19, 2019, Bowen met with resource officer for the School District, Officer Young, to explain his concerns with Atsas collecting money from parents for their children to play soccer. (R. 26, PageID# 145; R. 28, PageID# 404). Young took over the investigation, and he was supervised by Lt. Sferra. (R. 26, PageID# 158; R. 28, PageID# 404). Young contacted nearly 100 individuals whose children had participated in the School District's soccer programs to inquire about Atsas's collection of payments. (R. 26, PageID# 149, 245–264). Young collected six separate witness statements from parents, who indicated, *inter alia*, that they paid Atsas varying amounts between $25 and $70 for their children to play intramural soccer, to play soccer at the TCSC, or to play soccer at TCSC through the Campbell City School. (R. 26, PageID# 283–300). By his own admission, Young did not attempt of find out what exactly the TCSC was or its affiliation, if any, with the School District, even though he did not know what the TCSC was at the time of his investigation. (R. 26, PageID# 163).

Young filed an incident report stating that parents had made donations to Atsas for their children to participate in soccer, even though Campbell school sports are supposed to be free to play. (R. 26, PageID# 237–244). He also noted that the money these parents paid to Atsas was never turned over to the School District's athletic fund. (*Id.*).

On November 25, 2019, Atsas, having learned about Young's ongoing investigation, had his attorney reach out to Young to explain that the TCSC soccer programs were in no way related to the School District's soccer programs. (R. 1, PageID# 12 ¶¶ 47–48). Atsas's attorney provided Young with the contact information for the TCSC and offered to show Young Atsas's personal checks related to the TCSC's registration fees. (*Id.* ¶ 48). Young elected not to examine Atsas's checks or call the TCSC as part of his investigation. (*Id.*). Atsas alleges, around this time,

that Young gossiped to teachers and school employees stating that "Phil Atsas is going down" and "Phil Atsas is about to be arrested for stealing money." (R. 1, PageID# 12 ¶ 45).

On November 27, 2019, Young filed twelve criminal complaints against Atsas—six counts of felony theft in office and another six counts of misdemeanor theft by deception. (R. 26, PageID# 265–276). The Campbell Municipal Court issued arrest warrants for each complaint. (*Id*.). On the same day Young filed the criminal complaints, Atsas was arrested and spent fourteen hours in jail. (R. 1, PageID# 13 ¶ 52; R. 29, PageID# 557).

Atsas alleges that around this time, Bowen made a prepared statement to the media saying that "[we] have determined fraud has been committed, theft and potential criminal acts." (R. 1, PageID# 13 ¶ 54). The School District Defendants contend that Bowen did not comment to the media at this time, but rather turned over his notes to the media in response to a public records request, and those notes included the statement. (R. 33-1, PageID# 808 ¶ 11).

Atsas alleges that Bowen also reported Atsas to the Ohio Department of Education for fraud and theft from parents. (R. 1, PageID# 13–14 ¶ 55). The School District Defendants assert that neither Bowen nor the School District reported Atsas to the Ohio Department of Education, but rather the Department of Education learned about criminal charges against Atsas and contacted the School District to request information. (R. 33-1, PageID# 808). In November 2019, Bowen did report Atsas's potential fraud to the School District's auditor. (R. 28, PageID# 484; R. 33-1, PageID# 808 ¶ 12).

### 4. *Criminal Proceedings*

On December 5, 2019, the prosecution voluntarily dismissed all six felony counts that had been filed against Atsas. (R. 32-1, PageID# 772; R. 30, PageID# 725–730). The parties dispute whether Atsas stipulated to probable cause before dismissal of the felony charges. The

6

Municipal Court's dismissal forms—dated December 17, 2019—signed by the prosecutor and presiding judge indicate that "Defendant stipulates to probable cause," but neither Atsas nor his counsel signed these dismissal forms. (*Id.*). Thereafter, Atsas moved to dismiss the remaining misdemeanor charges, and the court denied the motion. (R. 32-1, PageID# 772–773).

On February 20, 2020, Atsas's jury trial was held. (R. 1 ¶ 58). During the trial, the prosecution dismissed four of the remaining six misdemeanor counts. (R. 32, PageID# 756). In addition, Atsas twice moved the trial court to dismiss the remaining two counts, but the presiding judge denied each motion to dismiss. *Id.* at PageID# 756, 776-777. Atsas was ultimately found not guilty on the remaining two misdemeanor counts. (R. 1, PageID# 14 ¶ 58).

After the trial, Bowen made a statement to the media saying that the School District would begin an internal investigation into the allegations against Atsas. (R. 1, PageID# 14 ¶ 58; R. 33-1, PageID# 808 ¶ 14).

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)). There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Non-moving parties may not rest upon the mere allegations in their pleadings nor upon

general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). Moreover, a party asserting an affirmative defense bears the burden of proof at trial as to the affirmative defense, and thus bears that burden at the summary judgment stage as well. *See, e.g.*, *Wells Fargo Bank, N.A. v. Favino*, 2011 WL 1256847, at *4 (N.D. Ohio Mar. 31, 2011) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

### IV. Discussion

#### A. Federal Rule of Evidence 404(b)

As a preliminary matter, Atsas contends that Defendants' introduction of evidence in their summary judgment briefs pertaining to Atsas's prior disciplinary history violates Federal Rule of Evidence 404(b). (R. 39, PageID# 1078). The Rule provides generally that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Sixth Circuit has held that background or "*res gestae*" evidence is an exception to the general provision of Rule 404(b)(1). *See United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense." *Id*. (internal quotation marks omitted) (*quoting United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). Such background evidence is typically "a prelude to the charged

8

offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id*. (internal quotation marks omitted) (*quoting Hardy*, 228 F.3d at 748).

Here, Atsas's reprimand and disciplinary history forms critical context for the investigation and criminal charges brought against him. Such history, especially Atsas's troubled past with fundraising, helps explain why Defendants pursued an investigation into Atsas's conduct after learning about his request for payment from parents for their children to participate in soccer programs. Specifically, this history is pertinent to Bowen's testimony, as his understanding of Atsas's conduct was informed by Atsas's prior fundraising issues and the School District's repeated instructions that Atsas was to stop handling money.

For the foregoing reasons, evidence pertaining to Atsas's prior disciplinary history is admissible pursuant to the Federal Rules of Evidence.

B. Section 1983

To prove a claim under 42 U.S.C. § 1983, the plaintiff must identify a right secured by the Constitution or laws of the United States, and the deprivation of that right by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Atsas identifies the alleged deprivation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. (R. 1, PageID# 14–20 ¶¶ 60–71, 74–76).

Atsas alleges that the Campbell Defendants falsely arrested him and committed an illegal seizure, in violation of his Fourth Amendment rights. (R. 1, PageID# 14–16 ¶¶ 60–71). Additionally, Atsas alleges that all Defendants are responsible for the malicious prosecution of Atsas's charges for theft in office and theft by deception, in violation of both his Fourth and Fourteenth Amendment rights. (R. 1, PageID# 17 ¶¶ 74–76).

Defendants move for summary judgment on the § 1983 claims on the basis of qualified immunity, and other grounds. (R. 32, PageID# 757–765; R. 33, PageID# 803). In his opposition brief to the Campbell Defendants' Motion for Summary Judgment, Atsas argues that qualified immunity should not apply here because there was no probable cause to support Defendants' conduct, and the investigation into the parents' TCSC payments was deficient. (R. 39, PageID# 1094–1095).

### 1. *Qualified Immunity*

The Supreme Court has stated that the inquiry regarding qualified immunity is distinct from the merits of the constitutional claim itself. *Saucier v. Katz*, 533 U.S. 194, 204 (2001); *Dunigan v. Noble*, 390 F.3d 486, 491 n.5 (6th Cir. 2004). A government official who is performing a discretionary function is entitled to qualified immunity from suit[3] as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Painter v. Robertson*, 185 F.3d 567, 567 (6th Cir. 1999). In other words, any "objectively reasonable" action by a state officer, as assessed in the light of clearly established law at the time of the conduct at issue, will be protected by qualified immunity. *Painter*, 185 F.3d at 567. Qualified immunity can be defeated if the official "knew or reasonably should have known" that the action he took would violate the constitutional rights of the plaintiff. *Harlow*, 457 U.S. at 815. Qualified immunity is a legal question. *Saucier*, 533 U.S. at 200; *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The defendants bear the initial burden of coming forward with the facts to support that

---

[3] Qualified immunity is an immunity from suit, rather than a mere defense to liability. *Pearson*, 555 U.S. at 231; *Saucier*, 533 U.S. at 200; *Dunigan*, 390 F.3d at 490.

they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). Defendants, in this case, have satisfied their initial burden: it is undisputed that Young, Sferra, and Bowen were all acting in their official capacities.

The burden then shifts to Atsas. The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490–91 (6th Cir. 2003) (*citing Rich*, 955 F.2d at 1095). Upon the assertion of qualified immunity, the plaintiff must put forward "specific, nonconclusory factual allegations" that would defeat the immunity. *Siegert*, 500 U.S. at 236. (Kennedy, J., concurring).

The Supreme Court has held that the "two-step sequence" previously required by *Saucier v. Katz* "should no longer be regarded as mandatory," and that district courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The two factors that are relevant to demonstrate whether the defendants are entitled to qualified immunity from suit are "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id*. at 232 (internal citations omitted); *see also Saucier*, 533 U.S. at 201.

Whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a general broad proposition." *Saucier*, 533 U.S. at 201. The relevant inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v.*

*Haugen*, 543 U.S. 194, 199 (2004); *Saucier*, 533 U.S. at 202. If the law does not put the officer

on notice that his conduct would be clearly unlawful, summary judgment based on qualified

immunity is appropriate. *Saucier*, 533 U.S. at 202; *see also Pearson*, 555 U.S. at 231–32 (*citing*

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, where a constitutional

violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the

action in view of the circumstances the officer confronted assessed in light of 'clearly

established' legal rules." *Dunigan*, 390 F.3d at 491 (emphasis omitted) (*citing Saucier*, 533 U.S.

at 202; *Anderson*, 483 U.S. at 639).

<u>False Arrest, Illegal Search and Seizure, Malicious Prosecution</u>

Under the auspices of § 1983, Atsas alleges claims for false arrest, illegal search and

seizure, and malicious prosecution against some or all Defendants. Before conducting a qualified

immunity analysis, it is instructive to examine the elements of each claim.

A false arrest claim under federal law "requires a plaintiff to prove that the arresting

officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th

Cir. 2020) (*quoting Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *see also*

*Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("A false arrest, as its name suggests, is

simply an arrest which isn't supported by probable cause." (*citing Webb v. United States*, 789

F.3d 647, 666 (6th Cir. 2015))).

An illegal seizure claim pursuant to § 1983 pertaining to an arrest fails—like claims for

false arrest—where there was probable cause for the arrest. *See Cameron v. City of Riverview*,

2011 WL 3511497, at *6 (E.D. Mich. July 26, 2011), *report and recommendation adopted*, 2011

WL 3511485 (E.D. Mich. Aug. 11, 2011).

A malicious prosecution occurs where "(1) the defendant made, influenced, or

participated in the decision to prosecute; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (internal quotation marks omitted); *see also Dibrell v. City of Knoxville*, 984 F.3d 1156, 1164 (6th Cir. 2021) ("To prove that a prosecution (or the detention accompanying it) was an 'unreasonable' 'seizure,' a plaintiff must show, among other things, that the state lacked probable cause for the prosecution (or detention).").

An essential element of each claim is the lack of probable cause—in other words, if a defendant's actions were supported by probable cause, that defendant would be shielded by qualified immunity as the plaintiff would have failed to establish that there was a violation of a constitutional right. The question before this Court, then, is whether a reasonable fact finder could determine that Defendants lacked probable cause to arrest and prosecute Atsas. On this record, the answer to this question must be no.

Probable cause exists "when there are enough 'facts and circumstances' to make a reasonable person believe that 'the accused was guilty of the crime charged.'" *Howse*, 953 F.3d at 408 (*citing Webb*, 789 F.3d at 660). "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Dibrell*, 984 F.3d at 1164 (*quoting District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). It is "not a high bar to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (internal quotation marks omitted) (*quoting Wesby*, 138 S. Ct. at 586).

Atsas was charged under two Ohio criminal statutes: Ohio Revised Code §§ 2921.41(A)(1) (felony theft in office) and 2913.02(A)(3) (misdemeanor theft by deception). (*See* R. 26, PageID# 265–276). The former provides, "No public official or party shall commit any

13

theft offense . . . when . . . [t]he offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense." Ohio Rev. Code § 2921.41(A)(1). "Public official" is defined, in part, as an employee "of the state or any political subdivision." *Id*. § 2921.01(A). The misdemeanor theft statute provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y deception." Ohio Rev. Code § 2913.02(A)(3). As an initial matter, there is no dispute that Atsas is a "public official" as contemplated by the felony statute.

Defendants have put forth more than enough evidence to establish probable cause for Atsas's arrest and prosecution under these two statutes for theft. First, when Bowen and the Board initially learned about Atsas's collection of money from parents for their children's participation in a TCSC soccer program, it was in the context of Atsas's prior history of reprimand and suspension for improper fundraising. Bowen and the Board were aware that in 2017, after Bowen had specifically told Atsas to stop handling funds, Atsas had coordinated a preseason TCSC soccer program without the School District's approval, and a surprise invoice was sent directly to the School District. The School District paid the invoice in full, while Atsas raised funds that he turned over to the School District that did not cover the total invoice. As a result, when Bowen and the Board learned about the TCSC payment collections from parents, it was not unreasonable for them to be concerned that Atsas's behavior was either directly related to his conduct in 2017 (i.e., he may have charged students to play in the 2017 preseason camp) or he organized a different school soccer program and asked students to pay to participate in what should have been a free program.

Second, after Young took over the investigation, he contacted approximately 100

different parents of children who had participated in the School District's soccer program to learn more about Atsas's collection of money. (R. 26, PageID# 149, 245–264). Although he did not speak with each person, he collected verbal and written statements from different witnesses who had told Young that they paid Atas—in amounts that varied between $25 and $70 per child—for their children to participate in soccer programs, such as to play intramural soccer, to play soccer at the TCSC, or to play soccer at TCSC through the Campbell City School. (R. 26, PageID# 283–300). Young's investigation was clearly based on far more evidence than a "bare allegation by one individual that another stole property," as Atsas suggests. (R. 39, PageID# 1080).

The Sixth Circuit has held that an officer is "entitled to rely on" an eyewitness account to establish probable cause, unless there is "an apparent reason for the officer to believe that the witness 'was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.'" *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (*citing* and *quoting United States v. Amerson*, 1994 WL 589626, at *2–3 (6th Cir. Oct. 21, 1994) (unpublished)). Atsas only disputes two of the witness statements that Young collected—one for "never even describ[ing] a crime" and another for a witness's mistaken memory regarding where she had sent payment for the TCSC soccer program. (R. 39, PageID# 1083). Even if the Court sets aside those two witness statements, there are still other witness statements that Young collected that Atsas does not dispute, in addition to statements from other witnesses collected by Bowen. As a result, the Court finds that even just the non-disputed witness statements are sufficient to establish probable cause.

Third, the fact that the parents who gave witness statements said that they paid Atsas varying amounts of money for their children to play on Atsas's teams further supports a finding

15

of probable cause. This fact cut against the possible legitimacy of Atsas's collection of payments for the soccer program, as one would perhaps expect a standardized fee per child to play in such a program. Indeed, that is what Bowen believed. (R. 33-1, PageID# 807 ¶ 8). While this fact may not establish probable cause on its own, in conjunction with the other facts and circumstances, it supports its finding.

Fourth, the Campbell Municipal Court issued arrest warrants on each of the twelve criminal complaints filed by Young. Although the prosecution subsequently dismissed all but two misdemeanor counts leading up to and during the trial, the presiding judge found sufficient grounds to deny Atsas's motion to dismiss before trial, and then twice denied Atsas's motions to dismiss during the trial—thereby allowing the case to proceed to jury deliberation. The Court finds that in conjunction with the other facts and circumstances, the trial judge's determinations support the establishment of probable cause.

Atsas appears to assert that there was no probable cause because of Bowen's and Young's deficient investigation. Specifically, Atsas argues: (i) nobody inquired into basic facts tending to prove Atsas's innocence; and (ii) Bowen and the Board's investigation was fueled by their desire to get Atsas to sign a "last chance agreement." (R. 38, PageID# 1008–1009, 1023–1024; R. 39, PageID# 1081–1082). Neither of these arguments creates a material issue of fact to overcome summary judgment.

Atsas's first general argument amounts to the following contention: Atsas's collection of payments to organize a private recreational youth soccer program was not criminal in any way, and it was simple enough to determine the basic facts establishing his innocence of criminal wrongdoing, meaning that the police's, Bowen's, and the Board's investigations were obviously deficient. For example, Atsas alleges that any cursory inquiry into the TCSC organization would

16

have made it clear that it was a private organization that was unaffiliated with the School District, meaning that it was easily discoverable that he did not deceive parents to pay for their children to pay in a free school soccer program. (R. 39, PageID# 1081, 1083–1084). Additionally, Atsas argues that if any of the investigators had simply had a conversation with Atsas or spoken with another person, Officer John Gulu—also a soccer coach—about the subject of the investigation, any misunderstandings regarding the TCSC soccer program would have been avoided. (R. 39, PageID# 1079–1081, 1083–1084). None of these arguments are persuasive, however.

Indeed, it would have made for a more thorough investigation had Young endeavored to determine what the TCSC was, especially because it was mentioned in multiple witness statements he collected, and he was not familiar with the organization. Although the "investigation was certainly no model of thoroughness and left [] reasonable sources of evidence unexplored," on the present record, there is no genuine issue of material fact. *Ahlers*, 188 F.3d at 372. Even without gathering more information, there were sufficient facts to establish probable cause: even though the TCSC is unaffiliated with the School District, the fact that this same organization sent a surprise invoice to the School District in 2017 for a preseason camp organized by Atsas without the School District's approval would have led the police, Bowen, and the Board to have reasonable concerns regarding Atsas's conduct; and when coupled with the past concerns regarding Plaintiff's handling of moneys and other evidence such as the aforementioned witness statements (which Atsas has not shown were based on anything other than their honest beliefs), surpass the threshold of a probability or substantial chance of criminal activity.

While it may have made for a more thorough investigation had Defendants, as Atsas

17

argues, spoken with Atsas and Gulu as part of their investigation, the Sixth Circuit has clearly held that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371 (*citing Rainer v. Lis*, 1994 WL 33969 (6th Cir. Feb. 7, 1994) (unpublished)). Additionally, the Sixth Circuit has expressed that law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id.* (*quoting Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)). Therefore, Atsas's general argument alleging an insufficient investigation is unconvincing.

The Court notes that Atsas also argues that Bowen and the Board's investigation was improperly motivated by their desire for Atsas to sign a "last chance agreement."[4]  Atsas's only alleged proof of such a theory is an email that he introduces in his opposition brief to the School District Defendants' Motion for Summary Judgment. (*See* R. 38, PageID# 1008–1009; R. 38-9, PageID# 1072–1073).[5] Although Atsas offers supposition seeking to connect the email to an underlying motivation for the investigation, and Defendants argue that such email should be excluded as unauthenticated, the Court finds—without ruling on the authentication objection—that the document fails to obviate the probable cause finding. Ultimately, and after considering the totality of the circumstances, this one email—that Bowen is not personally on—fails to

---

[4]  As defined by the Ohio Revised Code, a "last chance agreement" is "an agreement signed by both an appointing authority and an officer or employee of the appointing authority that describes the type of behavior or circumstances that, if it occurs, will automatically lead to removal of the officer or employee without the right of appeal to the state personnel board of review or the appropriate commission." Ohio Rev. Code § 124.34(F).

[5]  It appears this email was sent by the School District's lawyer to Atsas's union attorney in October 2019. (See R. 38, PageID# 1008–1009; R. 38-9, PageID# 1072–1073). In Atsas's affidavit attached to his opposition brief, he indicates that Atsas's lawyer sent him a copy of the October email "written by Mr. Bowen's lawyer." (R. 38-1, PageID# 1027 ¶ 10).

18

undermine a finding of probable cause for Defendants' actions.

For the foregoing reasons, the Court holds that Defendants had probable cause to support the arrest, detention, and prosecution of Atsas. Thus, Defendants are entitled to qualified immunity on all Atsas's § 1983 claims. As a result, summary judgment is granted on Atsas's federal claims for false arrest, illegal search and seizure, and malicious prosecution.

### 2. *Municipal Liability—Inadequate Training and Inadequate Supervision*

The Court construes Atsas's complaint and briefing as alleging distinct claims for municipal liability against Campbell for inadequate training and inadequate supervision. The crux of Atsas's claims is that (i) Young "received inadequate training" from Campbell to perform a criminal investigation like Atsas's and (ii) Sferra did not properly supervise Young's investigation. (R. 1, PageID# 18 ¶ 82; R. 39, PageID# 1085–1089).

To prevail in a § 1983 suit against a municipality, "a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (*citing Monell v. Dep't of Soc. Servs.*, 436 US. 658, 694 (2016)). "[A] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Berry v. Delaware Cty. Sheriff's Office*, 796 F. App'x 857, 861 (6th Cir. 2019) (*citing Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To succeed on an inadequate training claim, a plaintiff must establish three elements: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [defendant's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Roell v. Hamilton Cty.*, 870 F.3d 471, 487 (6th Cir. 2017) (*quoting Brown*, 814 F.3d at 463).

There are two ways to prove that the inadequacy of a training program is a result of a municipality's deliberate indifference: "A plaintiff may prove (1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential' for a constitutional violation.'" *Berry*, 796 F. App'x at 862 (*citing Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738–39 (6th Cir. 2015)). Like an inadequate training claim, to maintain an inadequate supervision claim, a plaintiff "must show that the [municipality] acted with 'deliberate indifference' to the risk of [the constitutional violation]." *Amerson v. Waterform Twp.*, 562 F. App'x 484, 492 (6th Cir. 2014) (last alteration in original) (*quoting Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010)).

Atsas has alleged neither (i) a "pattern of similar constitutional violations by untrained employees" nor (ii) that Campbell has failed to train its employees to handle recurring situations like the Atsas investigation. Atsas simply pleads no facts, or makes any arguments, pertaining to municipality-wide constitutional violations or that Campbell's police officers are not properly trained to handle situations like the underlying investigation. He has also not demonstrated any violations of a federal right. As a result, Atsas has failed to establish deliberate indifference in connection with both his claims for inadequate training and supervision.

Therefore, summary judgment is granted as to Atsas's municipality liability claims against Campbell.

### C. State Law Claims

#### 1. *Malicious Prosecution and False Imprisonment*

Atsas alleges state law claims for malicious prosecution against all Defendants and false imprisonment against the Campbell Defendants. (R. 1, PageID# 16–17 ¶¶ 72–76). Under Ohio

law, probable cause is a pertinent factor for both claims. *See Brunswick v. City of Cincinnati*, 2011 WL 4482373, at *4 (S.D. Ohio Sept. 27, 2011). "To prevail on [a claim for malicious criminal prosecution], the plaintiff must prove the following elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'" *Id.* (*citing Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990)). "To establish a claim for false imprisonment, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and without his consent. . . . [B]ecause an arrest based on probable cause is a lawful detention, a finding of probable cause serves to defeat false arrest and false imprisonment claims." *Frazier v. Clinton Cty. Sheriff's Office*, 2008 WL 4964322, at *4 (Ohio Ct. App. Nov. 24, 2008).

For the same reasons as discussed above regarding Atsas's § 1983 claims, the Court holds that there was probable cause. As a result, summary judgment is granted as to Atsas's state law claims for malicious prosecution and false imprisonment.

## 2. *Abuse of Process*

Atsas brings a state law abuse of process claim against the School District Defendants related to Atsas's criminal proceedings, as well as Bowen's report to the Ohio Department of Education. (R. 1, PageID# 17 ¶¶ 77–79). To prevail on an abuse of process claim under Ohio law, a plaintiff must satisfy three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Read v. Fairview Park*, 764 N.E.2d 1079, 1081 (Ohio Ct. App. 2001) (*quoting Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994)). "Abuse of process does not lie in the wrongful bringing of an action, but

21

for the improper use, or 'abuse' of process." *Sherwin-Williams Co. v. Motley Rice, LLC*, 2009 WL 10740987, at *3 (N.D. Ohio Sept. 3, 2009) (*quoting Kavlich v. Hildebrand*, 2009 WL 625725, at * 2 (Ohio Ct. App. Mar. 12, 2009)). "[I]f one uses process properly, but with a malicious motive, there is no abuse of process . . . . The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner." *Id.*

To satisfy the second element of an abuse of process claim, a plaintiff must show a "further act in the use of process not proper in the regular conduct of the proceeding." *Clermont Envt'l Reclamation Co. v. Hancock*, 474 N.E.2d 357, 361 (Ohio Ct. App. 1984). Atsas alleges no such facts. Plaintiff merely argues that the criminal proceedings and Bowen's report to the Ohio Department of Education were motivated by an attempt to remove Atsas from his job without "dealing with his union lawyer or collective bargaining agreement." (R. 1, PageID# 17 ¶¶ 77–79). But Atsas fails to identify any alleged improper actions by the School District Defendants during the proceedings, and "[i]nitiating a lawsuit, by itself, is not an abuse of process." *Yona Inv. Grp., LLC v. Revilo's, LLC*, 2020 WL 7055727, at *4 (N.D. Ohio May 27, 2020).

For the foregoing reasons, summary judgment is granted as to Atsas's state law claim for abuse of process against the School District Defendants.

### 3. *Defamation*

Atsas brings state law defamation claims against Young and the School District Defendants. (R. 1, PageID# 18 ¶¶ 80–81). Under Ohio law, to succeed on a defamation claim, a plaintiff must prove that defendant made a (i) false publication, (ii) "with some degree of fault," (iii) "reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg.*

& *Constr. Trades Council*, 651 N.E.2d 1283, 1289–90 (Ohio 1995). Defamation has a one-year statute of limitations, and a cause of action accrues "upon the date of publication of the defamatory matter or at the time the words are spoken." *See* Ohio Rev. Code § 2305.11(A); *Smith v. Nat'l W. Life*, 92 N.E.3d 169, 171 (Ohio Ct. App. 2017); *Cramer v. Fairfield Med. Ctr.*, 914 N.E.2d 447, 458 (Ohio Ct. App. 2009).

Atsas's complaint and briefing do not identify the specific statements at issue for his defamation claims, but construing the complaint and briefing in the light most favorable to him, the Court can identify six potential candidates:[6] (i) Young's incident report and criminal complaints filed in November 2019; (ii) the statement(s) that Young allegedly made to school teachers and employees, in the "run-up to [Atsas] being charged and arrested" (i.e., November 2019) (R. 1, PageID# 1 ¶ 45); (iii) Bowen's personal notes from November 2019 that were turned over to the media; (iv) Bowen's report to the auditor made in November 2019; (v) Bowen's statement to the media following Atsas's trial in February 2020; and (vi) a report, which Bowen disputes he made, to the Ohio Department of Education at an unspecified time.

At the outset, the defamation claims related to Young's incident report and criminal complaints, Young's alleged statements to teachers and employees, Bowen's personal notes disclosed to the media, and Bowen's report to the auditor are barred by the one-year statute of limitations. Atsas filed the instant lawsuit on February 15, 2021, more than one year since the publication of those statements in November 2019. (*See* R. 1). No discovery rule applies to the defamation statute of limitations, and there is no tolling for a defendant's absence, concealment,

---

[6] Courts are not required to comb the record to make a plaintiff's case. The Court's consideration of these statements should not be construed as finding that they would otherwise satisfy the necessary elements of a defamation claim.

imprisonment, or incapacity. *See* Ohio Rev. Code §§ 2305.15, 2305.16; *Reed v. Jagnow*, 2013 WL 3178406, at *4 (Ohio Ct. App. June 17, 2013).

For the statement that Bowen made to the media following Atsas's trial, the parties agree that following Atsas's trial, Bowen said that the School District would begin its internal investigation into Atsas. (R. 1, PageID# 14 ¶ 59; R. 33-1, PageID# 808 ¶ 14). Atsas simply alleges that this statement is false without providing any evidence of its falsity and that the School District was not actually beginning an internal investigation. The Sixth Circuit has held that "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). As a result, the Court must grant summary judgment as to Atsas's defamation claim for this statement from Bowen.

As for the report to the Ohio Department of Education, the court must grant summary judgment for a similar reason. Even setting aside the factual dispute about whether Bowen or the Board made such a report, Atsas fails to provide facts to support a defamation claim—not even a statement from the report that he alleges is false.

For the foregoing reasons, summary judgment is granted as to Atsas's state law claims for defamation.

### IV. Conclusion

Defendants' Motions for Summary Judgment (R. 32; R. 33) are hereby GRANTED and this case is dismissed, for the foregoing reasons.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: June 25, 2025

25